Manuel Guzmán Rodríguez, Plaintiff and Appellee, v. Central San José, Inc., Defendant and Appellant.

No. 8445.   Argued April 15, 1942.—Decided May 18, 1942.

378

*Monserrat, Jr., De la Haba & Monserrat* and *R. Baragaño, Jr.,* for appellant. *Mariano* y *Federico Acosta Velarde* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

This is an action brought in the lower court seeking a judgment declaring the extinction and cancellation of a railroad right of way over a property belonging to the plaintiff. The cause of action is predicated upon the fact alleged by the plaintiff that the servitude in question, being a personal servitude constituted on November 4, 1910, in favor of the Central Vannina, a domestic corporation, from which the defendant derives its title, became extinguished upon the dissolution of the corporation Central Vannina on March 24,

1939; and, in any event, that said servitude became extinguished by reason of the lapse of more than thirty years from the granting of said railroad right of way.

The issue being thus stated, the question for determination in this appeal is whether the said servitude, constituted over a 400-acre (*cuerda*) property of which that of the plaintiff and appellee is the remainder, is a predial or real servitude, or whether, on the contrary, it is a personal servitude. If the former, the lien subsists until its extinction is shown on any of the grounds provided in §482 of the Civil Code (1930 ed.). If the latter, that is, if a personal servitude is involved, as maintained by the appellee in the lower court, we would have to conclude that the servitude became extinguished upon the dissolution of the corporation in whose favor the same was constituted.

Let us consider, therefore, the title whereby the servitude was constituted; the deed executed on November 4, 1910, before Notary Damián Monserrat y Simó. By said deed the owners of the aforesaid 400–acre property leased it to Central Vannina for a term which expired on June 30, 1922, and at the same time they constituted the servitude in question. However, as the lease contract is not in issue, we will disregard its covenants and will give all our attention to the clauses concerning the servitude. They are the seventh and ninth clauses of said deed and textually read thus:

"*Seven:* The owners of the above-described property grant to the corporation Central Vannina in perpetuity a right of way in and upon and through said property for the corporation Central Vannina to build thereon, in connection with such servitude, a permanent railroad track which shall occupy the necessary land for the track and the passage of trains and, as a condition of this servitude, it must provide for two grade crossings and build on the property one or two sidings sufficiently long for two or three wagons to the use by its owners or subsequent lessees, and it is likewise a condition hereof that at the expiration of the lease of this estate, unless extended, Central Vannina shall accept and grind, by contract, any

cane grown on said property under the same terms and conditions as it may accept and grind those of the most favored colono.

"＊  ＊  ＊  ＊  ＊  ＊  ＊

"*Ninth:* The within contract of lease together with the grant of right of way in and upon and through the property, and the other covenants thereof, once the same is recorded in the registry of property, shall have the effect of a real right, as a burden imposed on the property above described and binding upon subsequent purchasers. Pursuant to this clause the owners of the property, in the event of a sale by them, shall impose upon the purchasers the obligation to comply with the present contract."

Before proceeding further, it is advisable to explain that Central San José, Inc., is the successor in interest of the corporation Central Vannina, for which reason the former and not the latter is the defendant herein. It is likewise advisable to state here that when this case was called for trial in the lower court, the parties in open court agreed upon certain stipulations which in so far as was pertinent may be summarized as follows:

(*a*) That the 35-acre property belonging to plaintiff Dr. Guzmán Rodríguez is at present leased to the Sociedad Agrícola de Río Piedras by reason of the assignment to the latter by Central Vannina of its lease upon the aforesaid property.

(*b*) That upon a parcel of eighteen odd acres located in the ward (*barrio*) of Monacillos, Río Piedras, formerly owned by Central Vannina and now by Central San José, Inc., there is built the factory which formerly belonged to the Central Vannina and which was bought by the defendant; that on said parcel lies the main station of the factory railway, occupying an area of 41,058.67 sq. m., with sidings, branches, etc.

(*c*) That Central San José has access to the property of the plaintiff; that it repairs and uses the track during the grinding season; and the trains of the said central move over said track for the hauling of sugar, cane, fertilizers, etc., in connection with the planting and grinding of the sugar cane of the central.

Besides the deed of lease to which we have already referred, there was offered and admitted in evidence a certificate from the registry of property from which it appears that the 35-acre parcel now owned by the plaintiff is the remainder of the 400-acre property already mentioned, it further appearing from said certificate that the lease contract, including the constitution of the servitude, has been recorded in the registry of property ever since January 23, 1912, prior, of course, to the acquisition of the 35-acre parcel by the plaintiff.

On the basis of that evidence, and after discussing the nature of real and personal servitudes and the rule which, according to him, should be applied in order to distinguish them, the trial judge reached the following conclusion:

"We have our doubts as to whether the servitude under consideration could be considered as a personal servitude, for in the deed constituting it there is no description of the servient tenement. We are sure, however, that it is not a real servitude. If we admit that the same is a personal servitude, it became extinguished upon the dissolution of Central Vannina, Inc. and could not be assigned to the defendant to anyone else as being a peculiarly personal right. *The Roman Catholic Church* v. *The People,* 11 P.R.R. 451, *López* v. *Registrar,* 44 P.R.R. 873."

For a better understanding of the legal question involved in this case, it seems advisable to advert to the origin of this juridical institution and to follow, although briefly, its evolution until it reached its present stage in our jurisprudence. Scaevola says that the term "servitude" had no existence in the early days of the Roman law· that originally real servitudes were termed *jura praediorum* (predial rights) and that subsequently they were called *servitudes,* which term comprised other rights distinct from the *jura praediorum,* such as usufruct, use, and habitation, which were designated as *real* if the benefit therefrom went to an estate, and *personal* if to a person. 10 Scaevola, Civil Code, 134.

In the Roman law the only personal servitudes were usufruct, use, and habitation, and, under Justinian, there was added thereto the right to the services of another's slave, *operae servorum.*

Referring to servitudes in the Roman law, Professor Eugene Petit says in his "Elementary Treatise on Roman Law," page 250:

"Attached also as they are to the lot of the person which enjoys them, they are extinguished with the person's death. They are, moreover, very restrictive in number. For a long time, the Civil Law has only recognized the usufruct and the use. Under Justinian there were considered also as personal servitudes the *habitation* and the right to the services of somebody else's slave, *operae servorum.*"

Accordingly it was provided in the Digest:

"Servitudes aut personarum sunt, ut usus et usufructus, aut rerum, ut servitutes rusticorum praediorum et urbanorum." Bk. VIII, tit. I, l. 1.

The Partidas faithfully followed the Roman law, as may be seen in Law I, Title XXXI, Partida 3, where servitudes are classified as real and personal, it being stated in regard to the latter as follows:

"And there is another servitude which a man may acquire in things belonging to another for his personal benefit and not for the special benefit of his estate, such as a usufruct to enjoy the fruits from some estate owned by another person, or the use only of a dwelling house or in houses belonging to others, or the right to the services of some menial servants or farm laborers." *Los Códigos Españoles,* vol. 3, p. 376.

When the Spanish Civil Code was drafted, its framers, mindful of the provisions of Basis 12 to the effect that usufruct, use, and habitation should be defined and regulated "as limitations upon the ownership and as ways of dividing it," refused to consider the same as servitudes; but in view of the fact that there were other special real rights accepted and recognized by the Spanish legislation, such as those of

pasture, wood, and other similar ones which, although not servitudes in a strict sense, were more analogous to the latter than to the usufruct, they considered them as servitudes without applying to the same any special and different name. 4 Manresa, Civil Code, 571.

Commenting on such new addition to the Spanish civil law, the above-mentioned commentator says:

"We must not wonder, therefore, that our code, breaking with our domestic precedents, has fully discarded the great error of considering usufruct as a personal servitude. Usufruct is a servitude only in one sense: As a lien on another's property, neither more nor less than an annuity (*censo*) or a mortgage." Op. cit., vol. 4, p. 351.

The same view is upheld by Scaevola, volume 9, p. 83, and volume 10, pp. 136–137.

In harmony with Basis 12, *supra,* the Spanish Civil Code, under the caption "Different Kinds of Easements which may be Established on Estates," provided in §§ 530 and 531, as follows:

"Art. 530. An easement is a burden imposed upon real property for the benefit of another estate belonging to a different owner.

"The real property in favor of which the easement is established is called the dominant estate, and the one subject to it the servient estate.

"Art. 531. Easements may also be established for the benefit of one or more persons or of a community to whom the encumbered estate does not belong."

Such was the law in this island from July 31, 1889, when by a Royal Decree the Civil Code in force in the Peninsula was extended, with few modifications, to Puerto Rico, where it continued in force, until 1902, when it was repealed by our Legislature upon enacting the Revised Civil Code, which re-established the legislation preceding the Spanish Civil Code relative to personal servitudes, and according to which usufruct, use, and habitation were considered to be personal servitudes. Accordingly, was added §538 (§467, 1930 ed.)

384

immediately following §§536 and 537 of the Revised Civil Code (§§465 and 466, 1930 ed.), which are identical with §§530 and 531 of the Spanish Civil Code. Section 538, *supra*, provides as follows:

"Art. 538. (§467, 1930 ed.) All servitudes which affect lands may be divided into two classes, personal and real.

"Personal servitudes are those which are inseparably attached to the person in whose benefit they have been established, and which terminate with his life. *Such servitudes are of three kinds: usufruct, use and habitation.*

"Real servitudes, also called predial servitudes, are those enjoyed by the owner of a tenement and established on another tenement in benefit of the former.

"Predial servitudes are so called because, being established for the benefit of an estate, the obligations constituting it are due to the estate, and not to the person who may be the owner thereof." (Italics ours.)

It is expressly provided in §467, *supra*, that personal servitudes are of three kinds: usufruct, use, and habitation. In view of such mandatory legal provision, the only construction possible in this island is that, since July, 1902, when the Revised Civil Code took effect, no other personal servitudes may be considered except the three above mentioned. *Expressio unius est exclusio alterius.*

It was so suggested by this court for the first time in the case of *López* v. *Registrar,* 44 P.R.R. 873, 874. In said case, Julio P. Castro, who owned a 40-acre property, segregated therefrom and sold in 1893 to Zenón Montalvo Avilés a parcel of 13 acres (*cuerdas*). When said parcel was recorded in the name of Montalvo, the following was stated:

"It has been agreed that Mr. Castro may continue using the road across the land sold to Mr. Montalvo, who consents to and acknowledges this right or servitude in favor of the vendor. Therefore, Mr. Zenón Montalvo Avilés records his sale title with the servitude of right of way above mentioned."

In 1924 Montalvo sold the said 13-acre parcel to Enrique López Delgado in whose name the same was recorded in the

registry. In November, 1932, López Delgado requested in writing from the registrar the cancellation of the above-mentioned servitude of passage, on the grounds that, according to the instruments submitted by the petitioner, Julio P. Castro had renounced the same; and that the said Castro had died. The instrument submitted to the registrar were a private document subscribed by Castro before a notary, wherein he expressly renounced the servitude, and a certificate from the Civil Registry of Mayagüez evidencing the death of Castro. The registrar denied the cancellation on the ground, among others, that a real servitude was involved. On appeal from the decision of the registrar, this court, in reversing the same, said:

"The code in force *when the servitude the object of this proceeding was established,* provided as follows:

(Here follow §§ 530 and 531 of the Spanish Civil Code, already transcribed)

"Although much has been written by the commentators on the Spanish Civil Code from which was derived, with few modifications, the code in force in this jurisdiction in 1893, and by the commentators on similar codes of other nations, as to whether personal servitudes exist, and as to whether the so-called personal servitudes are mere rights or burdens upon the property of another person as in the case of mortgages, and as to whether or not the rights of usufruct, use, and habitation are personal servitudes, we are of opinion that, since section 531 above cited prescribes that servitudes may be established for the benefit of one or more persons or of a community to whom the encumbered estate does not belong, it must necessarily be concluded that *at the time the servitude in the present case was created, the purchaser, Montalvo, could establish a personal servitude of passage in favor of the vendor Castro.* That being so, it now becomes necessary to examine what is shown by the registry, in order to determine whether the servitude is a real or a personal one.

"The record does not show a servitude of right of way across the parcel of 13 acres sold, in favor of the remainder of the estate from which the same was segregated nor in favor of any other property. It does not show that there is a dominant estate in favor of which the servitude has been established. On the contrary, what

appears therefrom is that the purchaser agreed that Castro would continue using the path across the property of 13 acres, and that the purchaser consented to and acknowledged this right or servitude in favor of the vendor. If to what has been said we add, that in determining whether a servitude is real or personal, it must be borne in mind that in the construction of a clause relating to a servitude, the law favors the freedom of land from burdens and charges, and that in the sale of any property when the vendor reserves some right therein, any doubt as to such reservation must be settled against the limitation of ownership, we must arrive at the conclusion that the servitude appearing in the registry is personal and not real." (Italics ours.)

It should not be understood that any agreement similar to that construed in *López* v. *Registrar, supra,* which, under the Spanish Civil Code, must be considered as a personal servitude, is not entitled to legal recognition in this jurisdiction. Such agreements can not be called servitudes, as that would be contrary to §467 of our Civil Code; but, although they do not constitute personal servitudes, they are what the text writers designate as "credit rights or personal obligations" (*derechos de crédito u obligaciones personales*). 10 Scaevola, Civil Code, 135.

■■ The appellee argues that the lien created upon the 400-acre property constitutes a right of use and, therefore, is a servitude. A similar assertion was made by the lower court when it stated in its opinion: "All (the commentators) admit that a right of passage may be established on a tenement in favor of a person as a user, and it is then a personal servitude." With all deference to the trial court, we will say that the commentators do not admit such a thing. As stated by Scaevola: "The servitude is a use or the prohibition of a use." Op. cit., vol. 10, p. 110. The term "use" in that sentence, however, means *"enjoyment"* or *"occupancy"* (*goce o disfrute*) and does not refer in any way to the *right of use,* which has a well-defined meaning in law. Sec. 451 of the Civil Code defines it as follows:

"Section 451.—Use is the right granted to a person to make *gratuitous* use of a thing belonging to another, or to receive a part of the fruits of the same, in so far as they be sufficient for the wants of the said person and his family." (Italics ours.)

Referring to the right of use, Scaevola says:

"It is well-settled that use is only a partial usufruct, a lesser usufruct, restricted to the right to receive the fruits of a thing, in sufficient amount to satisfy the needs of the user and of his family." Op. cit., vol. 10, p. 138.

If we followed the theory of the appellee and of the lower court, since every servitude is the use or the prohibition of the use of a thing, according to Scaevola, we would be led to the absurd proposition that any servitude, irrespective of its nature, provided the same had been gratuitously granted, might be considered as a *right of use* and, therefore, would be a personal servitude. In other words, predial or real servitudes would then disappear from the civil law in such cases.

Having laid down the above principles and discarding the possibility of the servitude herein being a personal one, inasmuch as no right of usufruct, use, or habitation is involved, it might be asked: Are we dealing with a real servitude or, on the contrary with a mere personal obligation? In our judgment, a reading of the seventh and ninth clauses already transcribed is sufficient to conclude that the railroad right of way, although granted to the corporation Central Vannina, was not so granted, as stated in the Partidas, "for its personal benefit" but "for the special benefit of its estate." In this connection, Manresa says:

"The words 'for the benefit of another estate' mean 'in favor or in furtherance of real property,' but this does not prevent the benefit or use from being actually enjoyed by the owner or possessor of the real property; said benefit or use goes to him as owner of the estate, or in other words, he enjoys such right on account of the property, by reason of owning it." Op. cit., vol. 4, p. 567.

Further on, at page 572, the same text writer says:

"If the profit or benefit from a servitude goes to a person in his capacity as owner of a certain estate, the servitude is *real;* if it goes to a person irrespective of his being such owner, or even without owning any property at all, the servitude is personal."

If we examine the seventh and ninth clauses already quoted, it will be observed that the purpose of the servitude is to permit the Central Vannina to build a permanent railroad track over the 400-acre property for the passage of its trains which, as is generally known and was moreover agreed upon by the parties, are used in the hauling of sugar, canes fertilizers, etc., in connection with the planting and grinding of its canes by the central. Moreover, it was stipulated in the seventh clause, as a condition of the servitude, that there should be built on the servient tenement "one or two sidings sufficiently long for two or three wagons to be used by its owners or lessees." The stipulation between the parties which we have summarized under letter (*b*), *supra,* shows the existence of a parcel measuring eighteen odd acres, located in the ward of Monacillos, Río Piedras which, as already stated, when the servitude was constituted, belonged to Central Vannina and which, together with the factory then and now existing thereon, was sold by said corporation to the defendant and appellant Central San José, Inc.; and that there was built on the said parcel the main station of the factory railroad over which the canes of the colonos and of the central itself are hauled to be converted into sugar at the factory. It clearly appears from the language of said clauses as well as from the stipulations made by the parties, that the servitude was constituted for the benefit or in favor of the central as a tenement and not in favor of the Central Vannina as a corporation, apart from its land.

The case of *Monroig* v. *Registrar,* 19 P.R.R. 782, is a perfect illustration of the legal principles above set forth. In said case a question similar to the one now under con-

sideration was raised. On August 19, 1911, the Parker spouses, who owned a rural property located in Bayamón, granted a perpetual servitude of right of way for a railroad thereon in favor of Antonio Monroig Obrador, married to Consuelo Falbe, his heirs, successors, representatives, and assigns, the said Monroig in the use thereof to have the right to lay a railroad track on a certain strip of land. It was further agreed in the deed embodying the servitude that Monroig would use said railroad for hauling to Central Juanita, in Bayamón, the sugar cane from his own property and from that of his colonos. Referring to the nature of the servitude thus constituted, this court said:

"Apart from all this, however, there is no doubt that the servitude in question is a predial one because the deed establishing the same states that the servitude shall be used for the purpose of carrying canes to the Central Juanita and the context of the document shows that the servitude was established in benefit of the said central, therefore it is a real and not a personal servitude."

In the case at bar, there is no dispute as to registration. The servitude had been recorded, with a description of the servient tenement, ever since January 23, 1912, and when subsequently the plaintiff and appellee bought the remainder thereof, he had notice, from the registry at least, of the existence of the servitude and, therefore, bought subject to such lien. Since the appellee can not claim the status of a third person (*Colón* v. *Plazuela Sugar Co.,* 47 P.R.R. 827; *Méndez* v. *Eastern Sugar Associates,* 89 F. (2d) 399, 405), and since the servitude is valid as between the original parties thereto, it is also valid as to the appellee who could acquire in the property no greater rights than were held by his predecessor in title.

The trial court says that there is no dominant tenement in the present case, and it asks: "Where is the dominant tenement in the case under consideration? It does not exist. It is so admitted by the defendant itself." The lower court is obviously mistaken when it states that the defendant

admits that there is no dominant tenement. Such admission nowhere appears in the record. On the contrary, both parties agreed as to the existence of a parcel of land measuring eighteen odd acres on which the factory stands, and the theory of the defendant, as appears from the language of the clauses establishing the servitude, is that it was in favor of such parcel that the lien was constituted. It is true that the deed fails to describe the dominant tenement, which is an indispensable requisite for recording the servitude, in accordance with §13 of the Mortgage Law; however, since it is not sought herein to record the servitude, inasmuch as the same is already recorded, although only as regards the servient tenement, and since the plaintiff—we repeat—can not, nor does he seek to, set up his status as a third person, such defect does not invalidate the servitude as to him. *Colón* v. *Plazuela Sugar Co.*, and *Méndez* v. *Eastern Sugar Associates, supra.*

■ The appellee also maintains that there is no servient tenement either; for, although the 400-acre property has been described, there is no description of the strip of land of said immovable on which the railroad track of the defendant and appellant is to be laid. Although it is advisable to describe such a strip of land and thus confine the servitude to the same, yet this is not required by law. In this connection Manresa says:

"The peculiar nature of the servitude of right of way presents some difficulty in the application of the stated rule. But such servitude appears in different forms. It may consist in the right to pass over any portion of another's land, or in the right to pass precisely over a designated way or path for the use of the servitude." Op. cit., vol. 4, p. 596.

■ Lastly, the plaintiff and appellee urges that said servitude was granted gratuitously or without consideration. From a cursory reading of the seventh and ninth clauses above mentioned, it will be readily noticed that Central Vannina, appellant's predecessor in interest, in considera-

tion of the constitution of the servitude undertook and performed certain obligations, such as the construction of sidings to be used by the owners or subsequent lessees of the servient tenement, and assumed the obligation of accepting and grinding, by contract, any cane grown on the servient tenement under the same conditions as it might accept and grind that of the most favored colono.

Since the servitude involved in the present case is a predial one, the dissolution of the corporation in whose favor it was originally constituted does not affect the existence of the lien, and since it has not been shown that such servitude has become extinguished in any way pursuant to §482 of the Civil Code, 1930 ed., the appeal must be sustained, the judgment appealed from reversed, and the complaint dismissed with costs to the defendant but without including attorney's fees, as there has been no obstinacy on the part of the plaintiff in bringing this action.